# EXHIBIT A

## PURCHASE MONEY NOTE

**$1,500,000.00**                                                  **August 24, 2012**
                                                                   **New York, New York**

**FOR VALUE RECEIVED,** DEXTER BARTHOLOMEW and DJENANE
BARTHOLOMEW, collectively residing at 23 Dora Lane, Holmdel, New Jersey 07733, and FRANK R.
SEDDIO, residing at 9306 Flatlands Avenue, Brooklyn, NY 11236, (collectively,
"**Maker**"), promise to pay to the order of MARIE CONDE, residing at 126 Laredo Drive,
Morganville, NJ 07751 ("**Holder**"), or at such other place as may be designated in writing by the
Holders any Holder of this Promissory Note, the principal sum of One Million Five Hundred
Thousand and 00/100 ($1,500,000.00) Dollars ("**Principal Sum**"), in lawful money of the United
States of America, with interest thereon computed from the date hereof at the per annum rate of
interest of five and 00/100 (5.00%) percent, calculated on a 360-day basis, for the actual number of
days the Principal Sum is outstanding and payable.

The Principal Sum, together with all interest accrued thereon at the rate aforesaid, shall be
due and payable as follows:

(i)    commencing on the first (1") day of October, and continuing on the first (1") day of
       each consecutive month thereafter for the next Sixty (60) months thereafter, equal
       consecutive payments of principal and interest in the amount of ;

(ii)   a single payment constituting the outstanding principal balance of this
       Promissory Note, together with all interest accrued thereon, on October 1, 2017
       ("**Maturity Date**"). However, the Maker shall have the option of extending
       payment of said loan for up to an additional Sixty months with equal payments
       continuing monthly until such time as the entire principal and all interest due is
       paid in full or the additional sixty monthly period expires.

(iii)  Notwithstanding the foregoing, in the event that the two (2) or more checks
       delivered by the Maker are returned and/ or uncollected, the Holder shall have
       the right to require that any and all future payments hereunder be made by wire
       transfer and/ or certified or official check. This Promissory Note may be prepaid
       in whole or in part at any time and without penalty or premium of any nature
       whatsoever.

This Promissory Note is secured by, among other things, a certain mortgage of even date
herewith ("**Mortgage**") encumbering certain premises known as and by the street address of 204
Kings Way, London, Kentucky, 40741; 100 Ikebana Path, Georgetown, Kentucky, 40324; 2020 South
Highway 27, Somerset, Kentucky, 42501; and 110 Retail Road, Nicholasville, Kentucky, 40356. The
Mortgage specifies various defaults upon the happening of which all sums due and owing on this
Promissory Note may, at Holder's sole and exclusive option, be declared immediately due and
payable.

In the event that default shall be made in the payment of any principal, interest and/or any other sum due and owing by the Maker to the Holder pursuant to the provisions of this Promissory Note, and in the further event that said default continues for a period of ten (10) days from and after the date that such sum was due and owing hereunder (hereinafter a **"Delinquent Payment"),** then and in such event, in addition to the Delinquent Payment, the Maker shall pay to the Holder **(i)** interest on the Delinquent Payment at the rate of  Two (2%)% per annum from the date that the Delinquent Payment was originally due and owing by the Maker to the Holder hereunder up to and including the date that the Delinquent Payment is actually received by the Holder and **(ii)** a late charge equal to Five Hundrd ($500.00) Dollars.    The obligations of the Maker under this Promissory Note are subject to the limitation that payments of interest shall not be required to the extent that the charging of or the receipt of any such payment by the Holder would be contrary to the provisions of law applicable to limiting the maximum rate of interest which may be charged or collected by the Holder.  To the extent that the Maker shall have made interest payments to the Holder and the Holder shall have inadvertently accepted interest payments in excess of the amount permitted by law, the amount of said excess shall be applied by the Holder in reduction of principal and shall be deemed to be a prepayment of principal.

In the event it shall become necessary for the Holder to employ counsel to collect this Promissory Note or to protect or foreclose the security given for this Promissory Note at any time, now or hereafter, the Maker also agrees to pay to the Holder any and all costs of such collection including, without limitation, reasonable attorneys' fees for the services of such counsel, whether or not suit be brought.

The Holder shall not by any act, delay, omission, or failure to act be deemed to have waived any right, power, privilege or remedy hereunder, and no waiver whatsoever shall be valid unless in writing and signed by the Holder, and then only to the extent therein set forth; nor shall any single or partial exercise of any right, power, privilege or remedy hereunder preclude any further exercise thereof, or the exercise of any further right, power, privilege or remedy.  The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently.  A waiver by the Holder of any right or remedy under the terms of this Promissory Note, on any one occasion, shall not be construed as a bar to any right or remedy which the Holder would otherwise have had on any future occasion.

Presentment for payment, notice of dishonor, protest and notice of protest are hereby waived; and in any litigation with the Holder, whether or not arising out of or relating to this Promissory Note or any collateral security therefore, the Maker expressly waives trial by jury, and in addition, expressly waives the right to interpose any defense based on any claim of laches and any set-off, counterclaim or cross-claim of any nature or description.  This Promissory Note may not be changed orally, but only by an agreement in writing and signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

This Promissory Note shall be governed and construed in accordance with the laws of the State of New York without regard to any principles of conflicts of law.

_____
DEXTER BARTHOLOMEW

_____
FRANK R. SEDDIO

State of New York ~~York~~ Jersey )
                                   ) SS.:
County Of _____               )

On the _____ day of September in the year 2012 before me, the undersigned, a Notary Public in and for said State, personally appeared **DEXTER BARTHOLOMEW** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Mary Lombardo
Notary Public
My Commission Expires April 18, 2017

State of New York ~~York~~ Jersey )
                                   ) SS.:
County Of _____               )

On the _____ day of September in the year 2012 before me, the undersigned, a Notary Public in and for said State, personally appeared **FRANK R. SEDDIO** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
NOTARY PUBLIC

Mary Lombardo
Notary Public
My Commission Expires April 18, 2017

State of New York )
                  ) SS.:
County Of _____ )

On the _____ day of _____ in the year 2012 before me, the undersigned, a Notary Public in and for said State, personally appeared **DJENANE BARTHOLOMEW** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

NOTARY PUBLIC

# EXHIBIT B

# PURCHASE AGREEMENT

## LIMITED LIABILITY COMPANY

AGREEMENT made this _____ day of September, 2012, by and between DEXTER BARTHOLOMEW, (hereinafter known as BARTHOLOMEW) residing at 23 Dora Lane, Holmdel, New Jersey, 07733 and FRANK R. SEDDIO, (hereinafter known as SEDDIO)a residing at 2333 East 69th Street, Brooklyn, New York, 11234 hereinafter referred to as the SELLERS; and MARIE CONDE, (Hereinafter known as CONDE), residing at 126 Laredo Drive, Morganville, New Jersey, 07751, with regard to the purchase and sale of an ownership interest in DB & Associates Realty, LLC a Kentucky Limited Liability Company (Hereinafter known as DB), with principal offices at 201 West Short Street, Lexington, Kentucky, 40507.

# WITNESSETH

WHEREAS, DB & ASSOCIATES REALTY, LLC operates As real estate holding company with offices at 201 West Short Street, Lexington, Kentucky, 40507 and

WHEREAS, DEXTER BARTHOLOMEW represents and warrants that he is a Eighty Five (85%)Percent owner and general partner of DB & Associates Realty LLC, and

WHEREAS, The BARTHOLOMEW and CONDE both acknowledge and represent that Frank R. Seddio is the  owner of the remaining Fifteen (15%)and general partner of DB & Associates Realty LLC and

WHEREAS, the BARTHOLOMEW is desirous of selling Ten (10%) Percent of his share of his ownership in DB, and

WHEREAS, the CONDE is desirous of purchasing the said Ten (10%) share of ownership in DB from the BARTHOLOMEW,

NOW, THEREFORE, in consideration of the mutual promises made each to the other herein, it is mutually agreed as follows:

FIRST:    Subject to the terms and conditions hereof, the BARTHOLOMEW agrees to sell assign and transfer and CONDE agrees to purchase All of BARTHOLOMEW'S right, title and interest in and to Ten (10%) Percent share of the BARTHOLOMEW'S interest in DB upon the following terms and conditions:

1.   The purchase price shall be Ten ($10.00) Dollars and other good and valuable consideration.

SECOND:   CONDE shall be entitled to any and all rights and voting privileges relating to the ownership of said shares of the stock of DB.

THIRD:   The transaction shall be closed as follows:

a.   Simultaneously   therewith   Certificate   number _____ (  ) shall be issued to CONDE, as the

BUYER as and for her Ten (10%) share of her ownership in said Limited Liability Company;

THIRD:    BARTHOLOMEW represents and warrants to CONDE as follows:

1. That the BARTHOLOMEW is a Eighty Five (85%) partner in the Limited Liability Company.

2.  That the BARTHOLOMEW shall share with the CONDE any and all documentation and records he may have in his possession of the accounts documents of the Limited Liability Company.

3.  That the BARTHOLOMEW shall make available to the CONDE copies of all bank records of the Limited Liability Company and shall identify all business accounts and their whereabouts.

4. That the DB was duly organized and exists under and by virtue of the laws of the State of Kentucky;

5. That no action of which the parties are aware are pending against DB in any Court of the State of Kentucky or the United States.

FOURTH: The parties hereto represent each to the other that no broker brought about the within transaction.

FIFTH:    BARTHOLOMEW makes no representations or warranties other than those specifically set forth herein.

SIXTH:    The terms, covenants, conditions and representations set forth herein shall survive the closing of this transaction.

(6)

SEVENTH: This agreement shall bind the parties hereto, their heirs, executors, administrators, successors or assigns.

EIGHTH: Closing shall take place simultaneously with the completion of the purchase of the parcels of real property known as 204 Kings Way, London, Kentucky, 40741; 100 Ikebana Path, Georgetown, Kentucky, 40324; 2020 South Highway 27, Somerset, Kentucky, 42501; and 110 Retail Road, Nicholasville, Kentucky, on or about September ___ , 2012 at the offices of Frank R. Seddio, Esq., 9306 Flatlands Avenue, Brooklyn, New York.

NINTH: The CONDE acknowledges that he is fully familiar with the condition of said business operations of DB & Associates Realty, LLC, its premises and of the chattels, fixtures and equipment therein contained, and accepts the same "as is" and without any representations made by the undersigned or by any third party thereto.

TENTH: This shall constitute the entire agreement of the parties and shall be governed by the laws of the State of New York.

ELEVENTH: The parties represent and warrant that they have been represented by counsel of their choice.

**IN WITNESS WHEREOF,** the parties hereto have hereunto set their hands and seals the day and year first above written.

ACKNOWLEDGED BY:

_____
DEXTER BARTHOLOMEW

_____
FRANK R. SEDDIO

_____
MARIE FRANCE CONDE

(8)

# EXHIBIT C

B1 (Official Form 1)(04/13)

| **United States Bankruptcy Court**<br>**District of New Jersey** | **Voluntary Petition** |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Bartholomew, Dexter C** | Name of Joint Debtor (Spouse) (Last, First, Middle):<br>**Bartholomew, Djenane** |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>**xxx-xx-2163** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN<br>(if more than one, state all):<br>**xxx-xx-6068** |
| Street Address of Debtor (No. and Street, City, and State):<br>**23 Dora Lane**<br>**Holmdel, NJ**<br><div align="right">ZIP Code<br>07733</div> | Street Address of Joint Debtor (No. and Street, City, and State):<br>**23 Dora Lane**<br>**Holmdel, NJ**<br><div align="right">ZIP Code<br>07733</div> |
| County of Residence or of the Principal Place of Business:<br>**Monmouth** | County of Residence or of the Principal Place of Business:<br>**Monmouth** |
| Mailing Address of Debtor (if different from street address):<br><div align="right">ZIP Code</div> | Mailing Address of Joint Debtor (if different from street address):<br><div align="right">ZIP Code</div> |
| Location of Principal Assets of Business Debtor<br>(if different from street address above): | |

| **Type of Debtor**<br>(Form of Organization) (Check one box)<br>■ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | **Nature of Business**<br>(Check one box)<br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>■ Other | **Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)<br>☐ Chapter 7<br>☐ Chapter 9<br>■ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13<br>☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
|---|---|---|
| **Chapter 15 Debtors**<br>Country of debtor's center of main interests:<br><br>Each country in which a foreign proceeding by, regarding, or against debtor is pending: | **Tax-Exempt Entity**<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | **Nature of Debts**<br>(Check one box)<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."   ■ Debts are primarily business debts. |

| **Filing Fee** (Check one box)<br>■ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Chapter 11 Debtors**<br>Check one box:<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>■ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |
|---|---|

| **Statistical/Administrative Information** | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ■ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| ☐<br>1-49 | ■<br>50-99 | ☐<br>100-199 | ☐<br>200-999 | ☐<br>1,000-5,000 | ☐<br>5,001-10,000 | ☐<br>10,001-25,000 | ☐<br>25,001-50,000 | ☐<br>50,001-100,000 | ☐<br>OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|

Estimated Assets

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ■<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

Estimated Liabilities

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ■<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☐<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

B4 (Official Form 4) (12/07)

# United States Bankruptcy Court
### District of New Jersey

In re  Dexter C Bartholomew
_____Djenane Bartholomew_____   Case No. _____
                                                   Debtor(s)   Chapter ___11_____

## LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS

Following is the list of the debtor's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this chapter 11 [or chapter 9] case. The list does not include (1) persons who come within the definition of "insider" set forth in 11 U.S.C. § 101, or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims. If a minor child is one of the creditors holding the 20 largest unsecured claims, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

| (1)<br><br>Name of creditor and complete mailing address including zip code | (2)<br><br>Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | (3)<br><br>Nature of claim (trade debt, bank loan, government contract, etc.) | (4)<br><br>Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | (5)<br><br>Amount of claim [if secured, also state value of security] |
|---|---|---|---|---|
| CertusBank, N.A.<br>c/o Patricia K. Burgess, Esq.<br>Frost Brown Todd LLC<br>250 W. Main Street, Suite 2800<br>Lexington, KY 40507 | CertusBank, N.A.<br>c/o Patricia K. Burgess, Esq.<br>Frost Brown Todd LLC<br>Lexington, KY 40507 | Personal guaranty of Small Business Association loans with regard to Debtors' businesses. | Contingent<br>Unliquidated<br>Disputed | 4,225,000.00 |
| The Bank of Princeton<br>c/o Ryan L. DiClemente, Esq.<br>Saul Ewing LLP<br>650 College Road East, Suite 4000<br>Princeton, NJ 08540 | The Bank of Princeton<br>c/o Ryan L. DiClemente, Esq.<br>Saul Ewing LLP<br>Princeton, NJ 08540 | Personal Guaranty on behalf of GC Egg Harbor NJ Inc. | Contingent<br>Unliquidated<br>Disputed | 2,700,000.00 |
| Jai Santoshi Realty, LLC<br>7 Miller Court<br>Moorestown, NJ 08057 | Jai Santoshi Realty, LLC<br>7 Miller Court<br>Moorestown, NJ 08057 | Personal guaranty under Secured Term Note between DB Dining Group, LLC and Jai Santoshi Realty, LLC. | Contingent<br>Unliquidated<br>Disputed | 1,500,000.00 |
| Marie Conde<br>126 Laredo Drive<br>Morganville, NJ 07751 | Marie Conde<br>126 Laredo Drive<br>Morganville, NJ 07751 | Purchase Money Note secured by mortgage on 204 Kings Way, London, KY; 100 Ikebaha Path, Georgetown, KY; 2020 South Highway 27, Somersets, KY and 110 R | Contingent<br>Unliquidated<br>Disputed | 1,500,000.00 |

# EXHIBIT D

# AFX Research, LLC
## 20 Years of Title Document Research

### PROPERTY AND OWNERSHIP INFORMATION

| Owner's Name | MARIE FRANCE CONDE | Order # | 49115 |
|---|---|---|---|
| | Parcel: 32-35-31-00000-5000-00002.7, | | |
| Property | Indian River County, FL | Completed Date | 4/8/2015 |
| State | FLORIDA | Effective Date | 4/6/2015 |
| APN/Parcel/PIN | 32-35-31-00000-5000-00002.7 | County | INDIAN RIVER |

### CURRENT DEED

| Grantor | BRACKETT, PARKER & ASSOCIATES | Deed Date | 2/7/2005 |
|---|---|---|---|
| Grantee | MARIE FRANCE CONDE | Recorded Date | 2/9/2005 |
| | | Instrument \| Book/Page | 1833/1127 |
| | | Deed Type | CORPORATE WARRANTY DEED |
| Notes: | | | |

### TAX INFORMATION

| Year | Property Tax Status | Due Date | Amount |
|---|---|---|---|
| 2014 | PAID | | $387.90 |
| | | | |
| Notes: | NO DELINQUENCIES | | |
| | | TOTAL ASSESSED VALUE | $28,000.00 |

### OPEN MORTGAGE/DEED OF TRUST INFORMATION

| Mortgagor | MARIE FRANCE CONDE | Dated | 7/18/2013 |
|---|---|---|---|
| Mortgagee | GOLDEN RECOURCES, LLC | Date Recorded | 8/23/2013 |
| | | Instrument \| Book/Page | 2698/125 |
| Type | MORTGAGE | Original Amount | $1,120,000.00 |
| Related | | Recorded Date \| Book/Page | |
| Related | | Recorded Date \| Book/Page | |

### RELATED JUDGMENTS, UCC AND LIENS AGAINST OWNER

| Instrument # | Description | Date Recorded | Amount |
|---|---|---|---|
| | NO OPEN JUDGMENTS OR LIENS FOUND | | |
| | FOR CURRENT OWNER FOR SUBJECT PROPERTY | | |

### ADDITIONAL COMMENTS/INFORMATION

Matters affecting the above real estate which do not directly appear among the land records, or are not indexed to the exact listed names and legal descriptions above are not included in this report. This is not a commitment for insurance nor is it an opinion on marketability of title. Subject to terms and conditions at TitleSearch.com

1616809 RECORDED IN THE RECORDS OF JEFFREY K BARTON CLERK CIRCUIT COURT INDIAN
RIVER CO FL, BK: 1833  PG: 1429, 02/03/2005 12:54 PM  DOC STAMPS D  $2583.00

# Corporate Warranty Deed

**This Indenture,** made , February 7, 2005 A.D.
**Between**
**Brackett, Parker & Associates, Inc., a Florida corporation** whose post office
address is: 2066 14th. Avenue, Vero Beach , florida 32960 a corporation existing
under the laws of the State of Florida, Grantor and **Marie France Conde** whose
post office address is: 126 Laredo Drive, Morganville, New Jersey 07751, Grantee,

     **Witnesseth,** that the said Grantor, for and in consideration of the sum of Ten and No/100 Dollars ($10.00), to it in hand paid
by the said Grantee, the receipt whereof is hereby acknowledged, has granted, bargained and sold to the said Grantee forever, the
following described land, situate, lying and being in the County of Indian River, State of Florida, to wit:

**Parcel 1:**
The South 1/2 of the Northeast 1/4 of the Southeast 1/4 lying East of the right-of-way of State Road No. 15
(formerly State Road No. 29) in Section 36, Township 32 South, Range 34 East, Osceola County, Florida.

**Parcel 2:**
The Southeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 35
East, Indian River County, Florida.

**Parcel 3:**
The Southeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 35
East, Indian River County, Florida; subject, however, to a public right-of-way easement for ingress and
egress roads covering the South 25.0 feet thereof, which right-of-way is intended for the mutual benefit of
the public and all of the property owners in said land, LESS the East 1/2 of the Southeast 1/4 of the
Southeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 35 East.

**Parcel 4:**
The Northeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 35
East, Indian River County, Florida.

    Subject to taxes for the current year, covenants, restrictions and easements of record, if any.

Parcel Identification Number: 32-35-31-00000-5000-00002/3

    **And** the said Grantor does hereby fully warrant the title to said land, and will defend the same against the lawful claims of all
persons whomsoever.
    **In Witness Whereof,** the said Grantor has caused this instrument to be executed in its name by its duly authorized officer
and caused its corporate seal to be affixed the day and year first above written.

Brackett, Parker & Associates, Inc.

*Signed and Sealed in Our Presence:*

By: _____

    Robert A. Brackett
    Its: President

Witness Print Name: Patricia A. Horn

Witness Print Name: DOROTHY L. EMMONS

(Corporate Seal)

State of     Florida
County of     Indian River

The foregoing instrument was acknowledged before me this 7th day of February, 2005, by Robert A. Brackett, the President of Brackett,
Parker & Associates, Inc. A corporation existing under the laws of the State of Florida, on behalf of the corporation.  He is personally
known to me or has produced a valid driver's license as identification.

_____ (Seal)
Notary Public
Notary Printed Name: _____ PATRICIA A. HORN

My Commission Expires:: _____

PATRICIA A. HORN
MY COMMISSION # DD257594
EXPIRES: November 04, 2007

Closer's Choice Florida Corporate Deed/Letter

3120130054895 RECORDED IN THE RECORDS OF JEFFREY R. SMITH, CLERK OF CIRCUIT COURT INDIAN RIVER CO FL
BK: 2698 PG: 125, 8/23/2013 1:22 PM   M DOCTAX PD $875.00   INT TAX PD $500.00

After Recording Return To:

Thomas D. Flanigan, Esq.
McBrayer, McGinnis, Leslie & Kirkland PLLC
201 East Main Street, Ste. 900
Lexington, Kentucky 40507

Prepared by:

Guy M. Graves, Esq.
Gess Mattingly & Atchison, P.S.C.
201 West Short Street
Lexington, Kentucky 40507

_____ [Space Above This Line for Recording Data] _____

FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $875 ARE BEING
PAID UPON RECORDATION HEREOF BASED UPON A LIMITATION OF RECOVERY
UNDER THIS MORTGAGE AS MORE PARTICULARLY SET FORTH IN THE GRANTING
CLAUSE HEREIN AND NON-RECURRING INTANGIBLE PERSONAL PROPERTY
TAXES IN THE AMOUNT OF $500.00 HAVE BEEN PAID ON THAT CERTAIN
MORTGAGE OF EVEN DATE HEREWITH FROM JOYCE SEDDIO AND FRANK SEDDIO
IN FAVOR OF GOLDEN RESOURCES, LLC WHICH MORTGAGE IS RECORDED IN
OFFICIAL RECORDS BOOK ___, PAGE ___ OF THE PUBLIC RECORDS OF BROWARD
COUNTY, FLORIDA.

## MORTGAGE

DEFINITIONS

       Words used in multiple sections of this document are defined below and other words are
defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in
this document are also provided in Section 16.

A.      "Security Instrument" means this document, which is dated as of July 18, 2013, together
with all Riders to this document.

B.      "Borrower" means, individually and collectively, BARTHOLOMEW ENTERPRISE,
INC., a New York corporation, DB& ASSOCIATES REALTY, LLC, a Kentucky limited
liability company, GC GEORGETOWN KY, INC., a Kentucky corporation, GC LEXINGTON
KY, INC., a Kentucky corporation, GC LONDON KY, INC., a Kentucky corporation, GC
NICHOLASVILLE KY, INC., a Kentucky corporation, GC SOMERSET KY, INC., a Kentucky
corporation, DB LONDON KY REALTY, LLC, a Kentucky limited liability company, and DB
SOMERSET KY REALTY, LLC, a Kentucky limited liability company.

C.    "Lender" is GOLDEN RESOURCES, LLC.  Lender is a limited liability company organized and existing under the laws of Kentucky.  Lender's address is 107A North Killarney Lane, Richmond, Kentucky 40475.  Lender is the mortgagee under this Security Instrument.

D.    "Mortgagor" means MARIE FRANCE CONDE, a single person, Mortgagor is the mortgagor under this Security Instrument.

E.    "Note" means the promissory note signed by Borrower and dated July 18, 2013.  The Note states that Borrower owes Lender One Million One Hundred Twenty Thousand Dollars (U.S. $1,120,000.00) plus interest.  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than July 18, 2023.

F.    "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

G.    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

H.    "Riders" means all Riders to this Security Instrument that are executed by Mortgagor.  The following Riders are to be executed by Mortgagor [check as applicable]:

___ Adjustable Rate Rider        ___ Condominium Rider                ___ Second Home Rider
___ Balloon Rider                ___ Planned Unit Development Rider   ___ Other(s) [specify] _____
___ 1-4 Family Rider             ___ Biweekly Payment Rider

I.    "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

J.    "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Mortgagor or the Property by a condominium association, homeowners association or similar organization.

K.    "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

L.    "Escrow Items" means those items that are described in Section 3.

M.    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

2

N.    "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

O.    "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender:  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note up to an amount equal to $250,000.00; (ii) the performance of Borrower's covenants and agreements under the Note; and (iii) the performance of Mortgagor's covenants and agreements under this Security Instrument.  For this purpose, Mortgagor does hereby mortgage, grant, hypothecate and convey to Lender, the following described property located in the County of Broward, Florida:

SEE EXHIBIT A ATTACHED HERETO AND MADE A PART HEREOF

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property.  All replacements and additions shall also be covered by this Security Instrument.  All of the foregoing is referred to in this Security Instrument as the "Property."

MORTGAGOR COVENANTS that Mortgagor is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant, hypothecate and convey the Property and that the Property is unencumbered, except for encumbrances of record.  Mortgagor warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Mortgagor and Lender acknowledge, covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note.  To the extent provided in the Note, Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

3

BK: 2698 PG: 128

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15.  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current.  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note, and no offset or claim which Mortgagor might have now or in the future against Lender shall relieve Mortgagor from making payments due under this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    <u>Application of Payments or Proceeds</u>.  Except as otherwise described in this Section 2 or in the Note, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    <u>Funds for Escrow Items</u>.  To the extent required by Lender, Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower or Mortgagor to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are

called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower or Mortgagor, and such dues, fees and assessments shall be an Escrow Item. Borrower and/or Mortgagor, as applicable, shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower and/or Mortgagor, as applicable, shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's and/or Mortgagor's, as applicable, obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower and/or Mortgagor, as applicable, shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's and/or Mortgagor's, as applicable, obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower and/or Mortgagor, as applicable, is obligated to pay Escrow Items directly, pursuant to a waiver, and either Borrower or Mortgagor, as applicable, fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower and/or Mortgagor, as applicable, shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower and/or Mortgagor, as applicable, shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured). Lender shall not charge Borrower or Mortgagor, as applicable, for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower or Mortgagor, as applicable, interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower or Mortgagor, as applicable, any interest or earnings on the Funds. Borrower and/or Mortgagor, as applicable, and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower and/or Mortgagor, as applicable, without charge, an annual accounting of the Funds.

If there is a surplus of Funds held in escrow, Lender shall account to Borrower or Mortgagor, as applicable, for the excess. If there is a shortage of Funds held in escrow, Lender shall notify Borrower or Mortgagor, as applicable, and either Borrower or Mortgagor, as applicable, shall pay to Lender the amount necessary to make up the shortage, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, Lender shall notify Borrower or Mortgagor, as applicable, and either Borrower or Mortgagor, as applicable, shall pay to Lender the amount necessary to make up the deficiency, but in no more than 12 monthly payments. Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower or Mortgagor, as applicable, any Funds held by Lender.

4.    Charges; Liens. Mortgagor shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument,

5

leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Mortgagor shall pay them in the manner provided in Section 3.

Mortgagor shall promptly discharge any lien which has priority over this Security Instrument unless Mortgagor: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Mortgagor is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Mortgagor a notice identifying the lien. Within 10 days of the date on which that notice is given, Mortgagor shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Mortgagor to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance. Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's right to disapprove Mortgagor's choice, which right shall not be exercised unreasonably. Lender may require Mortgagor to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Mortgagor shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Mortgagor.

If Mortgagor fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Mortgagor's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Mortgagor, Mortgagor's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Mortgagor acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Mortgagor could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

6

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Mortgagor shall promptly give to Lender all receipts of paid premiums and renewal notices. If Mortgagor obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Mortgagor. Unless Lender and Mortgagor otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Mortgagor any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Mortgagor shall not be paid out of the insurance proceeds and shall be the sole obligation of Mortgagor. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Mortgagor. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Mortgagor abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Mortgagor does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Mortgagor hereby assigns to Lender (a) Mortgagor's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Mortgagor's rights (other than the right to any refund of unearned premiums paid by Mortgagor) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    Occupancy.    Mortgagor shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Mortgagor's principal residence for at least one year after the date of occupancy, if required by Lender, or unless extenuating circumstances exist which are beyond Borrower's control.

7.    Preservation, Maintenance and Protection of the Property; Inspections. Mortgagor shall not destroy, damage or impair the Property, allow the Property to deteriorate or

7

commit waste on the Property. Whether or not Mortgagor is residing in the Property, Mortgagor shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Mortgagor shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Mortgagor shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Mortgagor is not relieved of Mortgagor's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Mortgagor notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.     Intentionally Omitted.

9.     Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Mortgagor fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Mortgagor has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower and Mortgagor secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower and/or Mortgagor, as applicable, requesting payment.

If this Security Instrument is on a leasehold, Mortgagor shall comply with all the provisions of the lease. If Mortgagor acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

8

BK: 2698 PG: 133

10.     Intentionally Omitted.

11.     Assignment of Miscellaneous Proceeds; Forfeiture.  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Mortgagor any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Mortgagor.   Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Mortgagor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Mortgagor and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Mortgagor.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Mortgagor and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Mortgagor, or if, after notice by Lender to Mortgagor that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Mortgagor fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Mortgagor Miscellaneous Proceeds or the party against whom Mortgagor has a right of action in regard to Miscellaneous Proceeds.

Mortgagor shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Mortgagor can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.    Mortgagor and Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Mortgagor, Borrower or any of the respective successors in interest of Mortgagor or Borrower shall not operate to release the liability of Mortgagor or Borrower or any of the respective successors in interest of Mortgagor or Borrower. Lender shall not be required to commence proceedings against any of the respective successors in interest of Mortgagor or Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Mortgagor or Borrower or any of the respective successors in interest of Mortgagor or Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or any of the respective successors in interest of Mortgagor or Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13.    Joint and Several Liability; Co-signers; Successors and Assigns Bound. Mortgagor acknowledges that Borrower's obligations and liability under the Note shall be joint and several. However, Mortgagor is executing this Security Instrument only to mortgage, grant, hypothecate and convey Mortgagor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums under the Note secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without Mortgagor's consent.

Subject to the provisions of Section 18, any successor in interest of Mortgagor who assumes Mortgagor's obligations under this Security Instrument in writing, and is approved by Lender in Lender's sole and absolute discretion, shall obtain all of Mortgagor's rights and benefits under this Security Instrument. Mortgagor shall not be released from Mortgagor's obligations and liability under this Security Instrument unless Lender agrees to such release in writing in Lender's sole and absolute discretion. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14.    Loan Charges.. Lender may charge Mortgagor fees for services performed in connection with Mortgagor's default under this Security Instrument or Borrower's default under

10

the Note, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Mortgagor shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15.    Notices. All notices given by Mortgagor or Lender in connection with this Security Instrument must be in writing. Any notice to Mortgagor in connection with this Security Instrument shall be deemed to have been given to Mortgagor when mailed by first class mail or when actually delivered to Mortgagor's notice address if sent by other means. The notice address shall be the Property Address unless Mortgagor has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Mortgagor's change of address. If Lender specifies a procedure for reporting Mortgagor's change of address, then Mortgagor shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.    Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular

shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.   **Borrower's Copy.** Mortgagor shall be given one copy of this Security Instrument.

18.   **Transfer of the Property or a Beneficial Interest in Mortgagor.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Mortgagor at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Mortgagor is not a natural person and a beneficial interest in Mortgagor is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Mortgagor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Mortgagor must pay all sums secured by this Security Instrument. If Mortgagor fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.   **Mortgagor's Right to Reinstate After Acceleration.** If Mortgagor meets certain conditions, Mortgagor shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Mortgagor's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Mortgagor and/or Borrower, as applicable: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Mortgagor 's and/or Borrower's, as applicable, obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Mortgagor and/or Borrower, as applicable, pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Mortgagor, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

12

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Mortgagor. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Mortgagor will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Mortgagor will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Mortgagor nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Mortgagor or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Mortgagor pursuant to Section 22 and the notice of acceleration given to Mortgagor pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Mortgagor shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Mortgagor shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

13

Mortgagor shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Mortgagor has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Mortgagor learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Mortgagor shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Mortgagor and Lender further covenant and agree as follows:

22.    <u>Acceleration; Remedies</u>.    Lender shall give notice to Mortgagor prior to acceleration following Mortgagor's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Mortgagor, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Mortgagor of the right to reinstate after acceleration and the right to assert in the foreclosure pro¬ceeding the non-existence of a default or any other defense of Mortgagor to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. Without limiting the generality of the foregoing, any default under the Note shall constitute a default under this Security Instrument, and Lender shall be entitled to the remedies provided in this Security Instrument, including, but not limited to this Section 22.

23.    <u>Release</u>. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Mortgagor shall pay any recordation costs. Lender may charge Mortgagor a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.    <u>Attorneys' Fees</u>. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25.    <u>Jury Trial Waiver</u>. The Mortgagor hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

14

26.   Further Acknowledgment of Consideration. The Mortgagor hereby acknowledges and agrees that Mortgagor is or is related to a principal and/or equity holder of one or more of the entities that constitute Borrower, and that Mortgagor shall receive direct benefits and valuable consideration in connection with Mortgagor providing this Security Instrument in exchange for Lender making the Loan to Borrower.

27.   Commercial Loan Purpose. The Mortgagor hereby acknowledges and agrees that this Security Instrument secures the Loan, and that the Loan is a commercial loan, the proceeds of which are being used by the Borrower for commercial purposes. The Mortgagor further acknowledges and agrees that the Loan is not a residential home loan.

28.   Non-Homestead Property. The Mortgagor represents and warrants to Lender that the Property is not the homestead of Mortgagor.

29.   Assignment of Leases and Rents. Mortgagor hereby irrevocably, absolutely, presently and unconditionally assigns to Lender all rents, royalties, issues, profits, revenue, income and proceeds of the Property, whether now due, past due or to become due, including all prepaid rents and security deposits (collectively, the "Rents"), and confers upon Lender the right to collect such Rents with or without taking possession of the Property. In the event that anyone establishes and exercises any right to develop, bore for or mine for any water, gas, oil or mineral on or under the surface of the Property, any sums that may become due and payable to Mortgagor as bonus or royalty payments, and any damages or other compensation payable to Mortgagor in connection with the exercise of any such rights, shall also be considered Rents assigned under this Paragraph.   THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.   Notwithstanding the provisions of this Section 29, Lender hereby confers upon Mortgagor a license ("License") to collect and retain the Rents as they become due and payable, so long as no default under this Security Instrument, shall exist and be continuing. If such default has occurred and is continuing, Lender shall have the right, which it may choose to exercise in its sole discretion, to terminate this License without notice to or demand upon Mortgagor. The assignments of Rents contained in this Security Instrument are intended to provide Lender with all the rights and remedies of mortgagees pursuant to Section 697.07 of the Florida Statutes (hereinafter "Section 697.07"), as may be amended from time to time. However, in no event shall this reference diminish, alter, impair, or affect any other rights and remedies of Lender. In addition, this assignment shall be fully operative without regard to value of the Property or without regard to the adequacy of the Property to serve as security for the obligations owed by Mortgagor to Lender, and shall be in addition to any rights arising under Section 697.07. Further, except for the notices required hereunder, if any, Mortgagor waives any notice of default or demand for turnover of rents by Lender, together with any rights under Section 697.07 to apply to a court to deposit the Rents into the registry of the court or such other depository as the court may designate.

**[SPACE INTENTIONALLY BLANK; SIGNATURES ON FOLLOWING PAGE]**

15

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Mortgagor and recorded with it. Signed, sealed and delivered in the presence of:

**WITNESSES**                                    **MORTGAGOR:**

_____              _____(Seal)
Print Name:_____              MARIE FRANCE CONDE

_____
Print Name:_____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me this August _____, 2013, by Marie France Conde, who is personally known to me or who has produced _____ (type of identification) as identification.

                                                _____
                                                Notary Public
                                                Printed Name: _____
                                                My Commission Expires: _____
                                                Commission # _____

16

# TITLE SEARCH REPORT

*Fund File Number*: 32-2013-000413

### *EXHIBIT A*

Parcel 2:

The Southwest 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 39 East, Indian River County, Florida.

Parcel 3:

The Southeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 35 East, Indian River County, Florida;  Less the east 1/2 of the Southeast 1/4 of the Southeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 35 East.

Parcel 4:

The Northeast 1/4 of the Northwest 1/4 of the Southwest 1/4 of Section 31, Township 32 South, Range 35 East, Indian River County, Florida.

Parcel 1 :

The South 1/2 of the Northeast 1/4 of the Southeast 1/4 lying East of the right-of-way of State Road No. 15 (formerly State Road No. 29) in Section 36, Township 32 South, Range 34 East, Osceola County, Florida.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____     _____ (Seal)
                                            MARIE FRANCE COMDE - Borrower

_____     _____ (Seal)
                                                                        - Borrower

BARTHOLOMEW ENTERPRISE, INC.

_____     _____ (Seal)
                                            _____ , Its - _____ - Borrower

DB & ASSOCIATES REALTY LLC

_____     _____ (Seal)
                                            _____ , Its - _____ - Borrower

GC GEORGETOWN KY INC.

_____     _____ (Seal)
                                            _____ , Its - _____ - Borrower

GC LEXINGTON KY INC.

_____     _____ (Seal)
                                            _____ , Its - _____ - Borrower

GC LONDON KY INC.

_____     _____ (Seal)
                                            _____ , Its - _____ - Borrower

GC NICHOLASVILLE KY INC.

_____ _____ (Seal)
                                    _____ , Its - _____ - Borrower

GC SOMERSET KY INC.
_____ _____ (Seal)
                                    _____ , Its - _Pres_ - Borrower

DB LONDON KY REALTY LLC
_____ _____ (Seal)
                                    _____ , Its - _____ - Borrower

DB SOMERSET KY REALTY LLC
_____ _____ (Seal)
                                    _____ , Its - _____ - Borrower


_____ [Space Below This Line for Acknowledgment] _____

STATE OF _____N Y_____

COUNTY OF _____KINGS_____

The foregoing instrument was acknowledged before me this July _18_, 2013, by Marie France
Conde, who is personally known to me or who has produced _____N J D·L_____
(type of identification) as identification.

```
KENRICK CLARKE.
Notary Public - State of New York
NO. 01CL6150526
Qualified in Kings County
My Commission Expires DEC 2014
```

                                    _____
                                    Notary Public

                                    Printed Name: _KENRICK CLARKE_

                                    My Commission Expires: _DEC 2014_

                                    Commission # _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STATE OF _Kentucky_

COUNTY OF _Fayette_

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3010   1/01  _(page 17 of 21 pages)_

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July __19__, 2013, by
_Dexter Bartholomew_, for and in his/her capacity as ___President___, on behalf of
Bartholomew Enterprise Inc., who is personally known to me or who has produced
_Drivers License_ (type of identification) as identification.

> Samuel G. Carneal
> Notary Public-State at Large
> KENTUCKY
> Notary ID 413390

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July __19__, 2013, by
_Dexter Bartholomew_, for and in his/her capacity as ___Member___, on behalf of DB&
Associates Realty, LLC, who is personally known to me or who has produced
_Drivers License_ (type of identification) as identification.

> Samuel G. Carneal
> Notary Public-State at Large
> KENTUCKY
> Notary ID 413390

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July __19__, 2013, by
_Dexter Bartholomew_, for and in his/her capacity as ___President___, on behalf of GC
Georgetown KY, Inc., who is personally known to me or who has produced
_Drivers License_ (type of identification) as identification.

> Samuel G. Carneal
> Notary Public-State at Large
> KENTUCKY
> Notary ID 413390

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010   1/01 (page 18 of 16 pages)

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July _19_, 2013, by _Dexter Bartholomew_, for and in his/her capacity as _President_, on behalf of GC Lexington KY Inc., who is personally known to me or who has produced _drivers license_ (type of identification) as identification.

> Samuel G. Carneal
> Notary Public-State at Large
> KENTUCKY
> Notary ID 413390

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July _19_, 2013, by _Dexter Bartholomew_, for and in his/her capacity as _President_, on behalf of GC London KY Inc., who is personally known to me or who has produced _Drivers license_ (type of identification) as identification.

> Samuel G. Carneal
> Notary Public-State at Large
> KENTUCKY
> Notary ID 413390

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July _18_, 2013, by _Dexter Bartholomew_, for and in his/her capacity as _President_, on behalf of GC Nicholasville KY Inc., who is personally known to me or who has produced _Drivers License_ (type of identification) as identification.

> Samuel G. Carneal
> Notary Public-State at Large
> KENTUCKY
> Notary ID 413390

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010   1/01 (page 19 of 16 pages)

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July _19_, 2013, by
_Derek Bartholomew_, for and in his/her capacity as _President_, on behalf of GC
Nicholasville KY Inc., who is personally known to me or who has produced
_drivers license_ (type of identification) as identification.

```
Samuel G. Carneal
Notary Public-State at Large
KENTUCKY
Notary ID 413390
```

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July _19_, 2013, by
_Derek Bartholomew_, for and in his/her capacity as _President & Secretary_, on behalf of GC
Somerset KY Enterprise Inc., who is personally known to me or who has produced
_drivers License_ (type of identification) as identification.

```
Samuel G. Carneal
Notary Public-State at Large
KENTUCKY
Notary ID 413390
```

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July _19_, 2013, by
_Derek Bartholomew_, for and in his/her capacity as _Member_, on behalf of DB
London KY Realty LLC, who is personally known to me or who has produced
_drivers license_ (type of identification) as identification.

```
Samuel G. Carneal
Notary Public-State at Large
KENTUCKY
Notary ID 413390
```

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

FLORIDA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3010   1/01  (page 20 of 16 pages)

BK: 2698 PG: 147

STATE OF _Kentucky_

COUNTY OF _Fayette_

The foregoing instrument was acknowledged before me this July 19, 2013, by
_Derek Bartholomew_, for and in his/her capacity as _Security_, on behalf of DB
Somerset KY Realty LLC, who is personally known to me or who has produced
_Drivers License_ (type of identification) as identification.

Notary Public
Printed Name: _Samuel G. Carneal_
My Commission Expires: _March 9, 2014_
Commission # _413390_

Samuel G. Carneal
Notary Public-State at Large
KENTUCKY
Notary ID 413390

FLORIDA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3010   1/01 (page 21 of 16 pages)